UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Christopher Fournier

      v.                               Civil No. 08-cv-338-JD
                                         Opinion No. 2010 DNH 166

Warden, Northern New Hampshire
Correctional Facility


O R D E R

Christopher Fournier, proceeding pro se, filed a petition for habeas corpus relief, pursuant to 28 U.S.C. § 2254, from his state court conviction. As construed by the magistrate judge on preliminary review, Fournier brought three claims in support of his petition. The Warden moved for summary judgment. Because of the difficulties Fournier encountered in responding to the motion, the court appointed counsel to represent him for purposes of summary judgment. Fournier's opposition to summary judgment has been filed.


Standard of Review

Summary judgment is commonly used in habeas corpus proceedings to determine whether the issues raised may be decided based on the record, within the procedural confines of § 2254. See Fed. R. Civ. P. 81(a)(4); Rule 12, Rules Governing § 2254

Proceedings.  Ordinarily, summary judgment is appropriate when
"the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c).  The party seeking
summary judgment must first demonstrate the absence of a genuine
issue of material fact in the record.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly
supported motion for summary judgment must present competent
evidence of record that shows a genuine issue for trial.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

     In reviewing a petition for a writ of habeas corpus, "the
level of deference owed to a state court decision hinges on
whether the state court ever adjudicated the relevant claim on
the merits or not." Clements v. Clarke, 592 F.3d 45, 52 (1st
Cir. 2010).  If the state court did not consider the claim on the
merits, the federal court reviews the claim under the de novo
standard for purposes of § 2254.  Id.

     To challenge the legal basis of a state court's decision,
the petitioner must show that "the state court's decision 'was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as established by the Supreme Court of
the United States.'" Abrante v. St. Amand, 595 F.3d 11, 15 (1st

2

Cir. 2010) (quoting § 2254(d)(1)).  "[A] state-court decision is
contrary to clearly established federal law if the state court
employs a rule that contradicts an existing Supreme Court
precedent or it if reaches a different result on facts materially
indistinguishable from those of the controlling Supreme Court
precedent." Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir.
2010).  "A state-court decision constitutes an unreasonable
application of clearly established federal law if it identifies
the correct rule, but applies that rule unreasonably to the facts
of the case sub judice."  Id.

Challenges to the state court's factual findings will
succeed only if "the state court's decision 'was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding'" as shown by clear and
convincing evidence.  Abrante, 595 F.3d at 15 (quoting §
2254(d)(2)); see also § 2254(e)(1).  If the petitioner did not
develop the factual basis of the claim in state court, the
federal court will not hold a hearing unless the claim is based
on a new rule of constitutional law, the underlying facts could
not have been discovered previously, or the underlying facts
"would be sufficient to establish by clear and convincing
evidence that but for constitutional error, no reasonable
factfinder would have found the applicant guilty of the

3

underlying offense." § 2254(e)(2)(B); see also Forsyth v. Spencer, 595 F.3d 81, 85 (1st Cir. 2010).

## Background

Fournier was involved in a physical altercation with his ex-girlfriend, Tammy Robinson, early in the morning of January 22, 2006.  As a result, Robinson sustained injuries, including a lacerated spleen, which required surgery and a six-day stay in the hospital.  Fournier was arrested the same day and charged with two counts of assault and one count of obstructing the reporting of a crime.  On October 6, 2006, he was convicted on the charge of second degree assault and was acquitted of the other charges.

During the state criminal proceedings, Fournier was represented by three different attorneys from the New Hampshire Public Defender Program.  Before trial, his attorneys withdrew, citing a non-disqualifying conflict of interest.  Fournier then was represented by appointed counsel, Nicholas Brodich, who was not affiliated with the Public Defender Program.

Fournier and Robinson testified at trial, along with other witnesses, including police officers involved in the case, and the surgeon who treated Robinson for a lacerated spleen.  The trial court ruled that the defense could not ask Robinson about

another incident for the purpose of challenging her character for truthfulness.  Defense counsel did not ask for a jury instruction on self-defense.

Following his conviction, the New Hampshire Appellate Defender represented Fournier on appeal, raising a single issue that the trial court should have allowed defense counsel to cross-examine Robinson about an incident "bearing on her character for truthfulness" under New Hampshire Rules of Evidence 403 and 608.  Fournier moved, pro se, to disqualify the New Hampshire Appellate Defender on the ground that the conflicts of interest that caused counsel from the New Hampshire Public Defender Program to withdraw precluded representation by the New Hampshire Appellate Defender.  The New Hampshire Supreme Court denied the motion for disqualification.

Fournier also filed a pro se motion for a new trial, contending that his trial counsel was constitutionally ineffective because he failed to ask for an instruction on self-defense.  The trial court denied his motion for a new trial and his motion for reconsideration.  Fournier moved to have his appeal from the denial of his motion for a new trial consolidated with his direct appeal from his criminal conviction.  The New Hampshire Supreme Court assigned a separate number to the appeal from the denial of his motion for a new trial and declined the

appeal.  The New Hampshire Supreme Court also affirmed his
conviction on direct appeal.

Fournier, proceeding pro se, brought a habeas proceeding in
this court.  On preliminary review, the magistrate judge
determined that Fournier raised the following claims:

> 1. The NHSC's [New Hampshire Supreme Court] treatment of
> Fournier's appeal of the denial of his motion for a new
> trial as a nonmandatory case violated his rights under the
> Due Process Clause of the Fourteenth Amendment and the
> Equal Protection Clause of the Fifth Amendment;
>
> 2. Fournier was denied his right to the effective assistance
> of counsel, in violation of the Sixth and Fourteenth
> Amendments, when his trial attorney failed to assert a self-
> defense claim on his behalf;
>
> 3. Fournier's rights to the effective assistance of
> appellate counsel and to due process of law were denied, in
> violation of the Sixth and Fourteenth Amendments, when the
> NHSC appointed an attorney to represent him who should have
> been disqualified due to a conflict of interest.

The Warden moved for summary judgment.  While the motion for
summary judgment was pending, the court granted Fournier's motion
to amend his petition to add a claim that the trial court
violated his Fifth Amendment right to confrontation and New
Hampshire evidentiary rules by precluding cross-examination of
the victim "on a proper matter of inquiry," which was her
statement to police about another assault.  The cross-examination
claim is not addressed in the motion for summary judgment.

6

Fournier, who is represented by appointed counsel, has filed his opposition to the motion for summary judgment.

## Discussion

The Warden contends that this court cannot review the New Hampshire Supreme Court's decision to deny Fournier's non-mandatory appeal of the denial of his motion for a new trial, which is based on a state court rule.  The Warden also contends that the state court's decision on Fournier's ineffective assistance of counsel claim, based on the self-defense instruction, complies with federal law, and that his claim based on his counsel's alleged conflict of interest is not supported by federal law or the record in the case.  In his objection, Fournier declines to pursue his claim challenging the non-mandatory appeal, argues that his remaining claims were not procedurally defaulted, and contends that both claims meet the § 2254 standard.

### A.  Procedural Default

The Warden included an extensive discussion of the standard for procedural default in his memorandum in support of summary judgment.  He did not argue, however, that any of Fournier's

7

claims were procedurally defaulted.  Therefore, no basis has been shown to consider procedural default in this case.

B.  Denial of Appeal

     Fournier concedes that the New Hampshire Supreme Court's procedure, which makes an appeal from the denial of a new trial non-mandatory, is constitutional.  He states that he will not pursue that claim.  Therefore, the Warden is entitled to summary judgment on Fournier's first claim.

C.  Ineffective Assistance of Counsel - Self-defense

     Fournier contends that his trial counsel was constitutionally ineffective because he did not request a jury instruction on self-defense.  To succeed on a claim of ineffective assistance of either trial or appellate counsel, a habeas petitioner must show both that his counsel's representation fell below "an objective standard of reasonableness" and that the "deficient performance prejudiced the defense."  Pina v. Maloney, 565 F.3d 48, 54-55 (1st Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  "A lawyer's performance is considered deficient only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made

8

it." <u>Abrante</u>, 595 F.3d at 19 (internal quotation marks omitted). Prejudice requires the petitioner to show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 70 (1st Cir. 2009).

Under New Hampshire law, a defendant is justified in using force on another person to defend himself "from what he reasonably believes to be the imminent use of unlawful, non-deadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose." N.H. Rev. Stat. Ann. § 627:4, I. Force is not used in self-defense if the defendant intended to cause physical harm and provoked the other person or if the defendant was the initial aggressor and did not withdraw from the encounter and communicate his withdrawal to the other person. <u>Id.</u>

Fournier and Robinson had been a couple for several years but had recently ended their relationship. Despite their break up, they continued to have contact with each other. At trial, Fournier testified that he and friends were out socializing during the night of January 21, 2006. They joined Robinson and other friends at a dance club where they all had drinks and socialized. Robinson left with others before Fournier left.

As Fournier was walking home, he called Robinson and told her that he was walking home.  Fournier then turned off his telephone, and an hour later he found several hostile messages from Robinson.  Fournier was irritated that Robinson expected him to be at her beck and call and that she told him not to come to her apartment.

Fournier testified that Robinson was aggravated and frustrated with him and told him that she had another male friend at the apartment.  Despite Robinson's direction not to, Fournier decided to go to Robinson's apartment.  He testified that as he went into the apartment, he hit his leg on a rocking chair and that he threw the chair, breaking it.  He said that he was irritable and assertive, that he asked Robinson why she led him to believe she had another guy at the apartment, and that they had a heated argument.  Fournier said that Robinson hit him in the head and he slapped her.  He also said that Robinson was trying to hit him and that he was deflecting her blows and slapping her.  When Robinson came at him again, Fournier shoved her, and she fell on the floor hard.  A friend ran into the room and got between them.  Fournier said that he later told the police that he was sorry about what had happened.

Robinson testified that she was at home watching television with two friends when Fournier burst into her apartment, yelling

10

at her.  They argued.  Robinson said that Fournier yelled at her
with his face next to hers so that she could feel his teeth and
when she put her hand up to protect her face, he bit her hand.
Fournier punched her in the head, and while she was crying,
covering her head, and ducking down, he repeatedly punched her in
the ribs.  She said she was in extreme pain and could not
breathe.  Her friends intervened.  When Robinson tried to use the
telephone to get help, Fournier grabbed it and threw it down.  He
then picked up the rocking chair and held it over Robinson,
threatening to hit her while one of her friends tried to protect
her.  Fournier smashed the rocking chair on the floor.  Robinson
called the police.

While Fournier was in jail, he made telephone calls that
were recorded.  The recordings were played at Fournier's trial.
In a conversation with Robinson, Fournier said that what he did
was "horribly wrong" and "awful", that he did not intend to hurt
her that much, but that it was his "intention to smack [her] up a
little bit."  In other conversations, Fournier said that he was
sorry, that what he did was wrong, but that he was trying to hurt
Robinson "to a certain degree but not to cause bodily injury" and
that he was "[l]ooking to smack her around a little bit, and you
know, it got out of hand . . . ."

11

In response to Fournier's claim that his trial counsel was ineffective in failing to ask for a jury instruction on self-defense, the state court ruled:

> The defendant elected to testify at his trial. His testimony was both arrogant and condescending. While in one breath he would say that he was sorry for what happened, he continued to blame the victim for her jealousy. His overall testimony was to the effect that while he was sorry she got hurt, it was not his fault that the incident occurred. The jury had a full opportunity to listen to his side of the story. Obviously they elected not to believe his testimony. That is the prerogative of a jury.
>
> The Court has reviewed its notes of the trial and finds that the defendant's trial counsel not only was not ineffective but rather did an excellent job in presenting the defendant's view of the events to the jury. He is both experienced and well respected in his criminal defense work. There is no basis for the defendant's claim of ineffective assistance of counsel in this case.

The Warden contends that, as the trial court ruled, the evidence at trial did not support a self-defense instruction.[1]

Contrary to Fournier's arguments, the trial evidence shows that Fournier was the aggressor and that he intended to hurt Robinson. The state court did not apply federal or state law expressly in making the decision. The decision is not contrary to the federal standard for ineffective assistance of counsel because the record does not demonstrate that Fournier's counsel

---

[1]The Warden cites § 627:4,I but erroneously paraphrases § 627:4,II that pertains to the use of deadly force.

12

should have requested the self-defense instruction or that if the
instruction had been given, there was a reasonable probability
that the outcome would have been different.

D.    Ineffective Assistance of Appellate Counsel

    Fournier contends that his appellate counsel was ineffective
because he should have been disqualified based on a conflict of
interest.  Fournier's theory is that because his three attorneys
from the New Hampshire Public Defender Program withdrew from
representing him, based on an unidentified non-disqualifying
conflict of interest, the New Hampshire Appellate Defender was
impaired by a conflict of interest.  Although Fournier raised the
conflict of interest issue, the state court did not issue a
decision on the merits of that issue.  Therefore, this court
reviews Fournier's claim under the de novo standard.

    Ordinarily, a habeas petitioner must show both objectively
unreasonable representation and a reasonable probability that but
for counsel's ineffectiveness the outcome would have been
different.  Strickland v. Washington, 466 U.S. 668, 694 (1984).
When a claim for habeas relief is based on ineffective assistance
of counsel due to an actual conflict of interest, meaning that
counsel represented conflicting interests and that the conflict
adversely affected his performance, the petitioner need not prove

13

prejudice under the <u>Strickland</u> standard.  <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 73 (1st Cir. 2009).  A merely theoretical conflict, however, is not an actual conflict, and in that case, the petitioner must show that the "conflict actually affected the adequacy of his representation."  <u>Id.</u> (internal quotation marks omitted).

The Warden acknowledges that Fournier's Public Defender counsel all withdrew due to an unexplained conflict of interest. The Warden also acknowledges that in New Hampshire the Public Defender Program and the Appellate Defender operate as if they were a single firm.  In support of summary judgment, the Warden contends that Fournier cannot show that the Appellate Defender had a conflict and cites counsel's statement that he knew of no such conflict.  The Warden also contends that no prejudice occurred.

Fournier argues that a factual issue exists as to whether the Appellate Defender represented him under a conflict of interest because no complete explanation was given as to the conflict raised by the attorneys from the Public Defender Program.  The attenuated relationship between the lawyers in the Public Defender Program, who were said to have a "non-disqualifying" conflict, and the Appellate Defender does not support an inference of a conflict sufficient to raise a factual

14

issue.  In addition, even if a conflict existed, the conflict raised by the Public Defender attorneys was not disqualifying, and Fournier provides no evidence of an actual conflict.  In the absence of an actual conflict, Fournier must show prejudice caused by the conflict, which he has not done.

To the extent Fournier intended to raise a separate issue that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel due to the lack of a requested self-defense instruction, that claim also fails.  As is discussed above, however, that claim lacks merit.  Therefore, Fournier cannot show a reasonable probability that if appellate counsel had raised the self-defense instruction as a basis for ineffective assistance of trial counsel the outcome on appeal would have been different.

<u>Conclusion</u>

For the foregoing reasons, the Warden's motion for summary judgment (document no. 17) is granted.  Summary judgment is granted in the Warden's favor on the three claims found on

15

preliminary review.  The claim that was added by amendment to the

petition remains to be decided.


       SO ORDERED.


                            Joseph A. DiClerico, Jr.
                            United States District Judge

September 16, 2010

cc:  Harry C. Batchelder, Jr., Esquire
     Stephen D. Fuller, Esquire
     Elizabeth C. Woodcock, Esquire

16